## Chicago Consolidated Traction Company v. Michael F. Kinane.

### Gen. No. 13,649.

1. AMENDMENTS AND JEOFAILS—*effect of dismissal of all defendants.* The dismissal of all of the original defendants joined in an action of tort, leaving therein only those defendants who had been joined after the commencement of the action, does not entitle the remaining defendant to the dismissal of the action.

2. VERDICT—*when not disturbed as against the evidence.* In this case there is not such a clear preponderance of evidence on either side as makes it our duty to set aside the decision of the jury on it.

3. VERDICT—*when not excessive.* A verdict for $5,000 rendered in an action for personal injuries is not excessive where it appears that the plaintiff was permanently and seriously injured.

4. ARGUMENT OF COUNSEL—*how far law may be stated.* It is proper for counsel to state to the jury what he believes the law to be. It is not proper for counsel to state absolutely what the law is.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in this court at the March term, 1907. Affirmed. Opinion filed March 9, 1908.

**Statement by the Court.** This appeal is from a judgment of the Superior Court of Cook county for $5,000 in favor of the plaintiff below (appellee here) against the defendant below (appellant here). The judgment was upon the verdict of a jury in a per-

sonal injury case, in which the plaintiff declared that the defendants (as will appear hereafter there were originally more than one defendant) were on September 26, 1904, possessed of and in control of a line of street railway along West Monroe street in Chicago, and by their servants were running and operating a certain electric car thereon in a westerly direction "towards and to wit, 300 feet east of Halsted street, a certain other public highway there"; that he, the plaintiff, with all due care and diligence on his part, was riding in a certain wagon in a southerly direction upon West Monroe street and across the tracks of defendants there; that defendants, by their servants and agents, then and there "so negligently, carelessly and improperly ran, drove, operated and managed said electric car, that by and through the negligence and improper conduct of said defendants by their said servants" said electric car ran and struck against the wagon with great violence, whereby the plaintiff was thrown to the ground and injured.

The action was begun on October 22, 1904, by the plaintiff against three receivers of the Chicago Union Traction Company, against three receivers of the West Chicago Street Railroad Company, and against the Chicago West Division Railway Company.

August 22, 1906, on the plaintiff's motion, it was ordered that all papers and proceedings "be and are hereby amended" by making Chicago Consolidated Traction Company, a corporation, an additional party defendant, and that a summons issue, etc., and leave was given to amend the declaration, which was done by adding the words "and Chicago Consolidated Traction Company, a corporation," etc., to the caption and commencement of said declaration immediately after the names therein of the original defendants.

When the cause was called for trial before a jury on January 31, 1907, counsel for the Chicago Consolidated Traction Company, which had pleaded the general issue to the declaration as amended, admitted

638    APPELLATE COURTS OF ILLINOIS.

VOL. 138.]    Chicago Cons. Traction Co. v. Kinane.

in open court that at the time and place in question
the Chicago Consolidated Traction Company owned
and operated the car and tracks in question, and em-
ployed the motorman and conductor of the car. There-
upon the counsel for the plaintiff moved to dismiss the
cause as to all the other defendants, and was allowed
to do so without costs, without objection by the Chi-
cago Consolidated Traction Company. The counsel
for that company, however, immediately thereafter
moved to dismiss the cause altogether, on the ground
that as no one of the original defendants was left in
the cause, the court had on that account lost jurisdic-
tion.

It is implied in the bill of exceptions, although not
definitely stated, that the motion to dismiss included
a motion to withdraw the general issue already
pleaded by the company.

The court denied the motion, and counsel for the
defendant then stated that the motion being denied,
the general issue would stand as before, but that it
"ought to be understood" that the company attacked
the jurisdiction of the court in the case, and that
everything subsequently done was done "under ob-
jection and exception upon that ground." To this
the court assented, saying that the distinct under-
standing of the court and of counsel for both sides
was that the defendants were defending "under pro-
test and as a matter of necessity, and denying the
jurisdiction of the court at all stages."

At the close of the plaintiff's evidence, and again
at the close of all the evidence, the counsel for de-
fendant asked the court for a peremptory instruction
for the defendant, which motion was denied. After
the evidence was all heard, the court gave to the jury
three instructions at the request of the plaintiff, and
twenty-three at the request of the defendant, refusing
none that were offered. No complaint is made by ap-
pellant in argument of any of these instructions, al-
though the giving of those asked by the plaintiff is

included in the formal assignments of error. The appellant, however, as hereafter noted in the opinion, claims that a ruling by the court during the argument of plaintiff's counsel, of which they complain and to which they excepted, was tantamount to an erroneous instruction.

The trial resulted in a verdict for the plaintiff for $5,000, on which, after a motion for a new trial and a motion in arrest of judgment had been overruled, the court gave the judgment appealed from.

The motion for a new trial, which was in writing, characterized the verdict as against the law and the evidence, as inconsistent with the instructions, and as excessive, and attacked the rulings of the trial judge on the admission and exclusion of evidence and his refusal to take the case from the jury, and complained also that counsel for the plaintiff had addressed improper remarks to the jury in argument.

The same objections are made to the verdict and judgment in the assignments of error in this court.

JOHN A. ROSE and ALBERT M. CROSS, for appellant; W. W. GURLEY, of counsel.

WILLIAM E. MASON and JOHN C. KING, for appellee; JAMES D. POWER, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

We do not think the contention of the appellant in this case regarding the jurisdiction of the court well taken. The bringing into the case of the appellant as an additional defendant was exactly within the terms of sections 23 and 24 of the Practice Act as it stood when the amendment was made. The discontinuance five months later as against the co-defendants of the appellant was equally within those terms.

The decision of this court in Zukowski v. Armour & Co., 107 Ill. App. 663, is relied on as sustaining the

640    Appellate Courts of Illinois.

Vol. 138.]    Chicago Cons. Traction Co. v. Kinane.

proposition of the appellant that jurisdiction was lost when the only defendant who remained in the cause was one who had been added after the suit had been begun and was pending against others. We do not so read the opinion in that case. The distinction was there drawn between substitution and addition or diminution of defendants, and it was held that as the common law did not allow either, and the statute only covered the latter, "substitution" was not permissible.

. "It will be noted," says Judge Ball in the opinion, "that *when* the corporation was substituted as sole defendant, there was a dismissal as to all the then defendants, and that *when* the individuals named were afterward made defendants, the corporation, then the only defendant, was dismissed out of the case.    *    *    * The plain reading of the latter section" *(i. e.* of the statute) "is that in order to add a necessary party to either side of the case there must be a plaintiff or a defendant already there to whom the new party may be joined, and that when a discontinuance is asked as to plaintiff or as to defendant, there must then be another plaintiff or another defendant from whom the party discontinued may be severed."

The conditions named existed in the case at bar both when the addition and the dismissal were made, and there is nothing in the Zukowski case showing that this court meant to decide that the final result of "substitution" of an ultimate defendant for an original one might not be secured under the Practice Act, provided the terms and conditions of the statute were complied with.

Irrespective, therefore, of the question which might be raised as to the efficiency of the "*caveat*" of the appellant before proceeding to trial, to repel the possible claim that it had, by going to trial, acknowledged the jurisdiction of the court, and assuming that the position of the appellant, assented to by the court and apparently by opposing counsel, was a possible and effective one under the law, we think that we must,

nevertheless, consider and decide this case upon the merits.

The first contention of the appellant on the merits is that the verdict was against the weight of the evidence, and indeed, that practically there was no proof to sustain the allegation of the defendant's negligence, and that there was such evidence of contributory negligence on the part of the plaintiff as to make it incumbent on this court to say as a matter of law that he was guilty of it and cannot recover.

We think that unless it is possible for us thus to say as a matter of law that the evidence entirely fails to show defendant's negligence, or conclusively shows plaintiff's contributory negligence, we should not disturb the findings of the jury. If any of the evidence can be said fairly to establish the defendant's negligence, or to contradict that which the defendant appeals to as sustaining the allegation of contributory negligence, then the weight of it, as against that which conflicts with or contradicts it, seems to us in this case a question for the jury. In other words, where the testimony conflicts as in this case, there is not such a clear preponderance on either side as makes it our duty to set aside the decision of a jury on it.

The accident resulted from a collision between an electrically driven street car run by the defendant and a wagon which the plaintiff was driving. The collision happened on West Monroe street, in Chicago, about half way between Desplaines street and Halsted street. The wagon with its pole was twenty-six or twenty-seven feet long. It was loaded with a lot of school furniture. It was driven out of a private driveway on the property of the Board of Education, which runs into West Monroe street from the north, and which was between two buildings occupied and used by said board. The wagon was driven south out of this driveway onto the tracks of the defendant on West Monroe street. It is noted in the evidence and argument that there was a

642      APPELLATE COURTS OF ILLINOIS.

VOL. 138.]      Chicago Cons. Traction Co. v. Kinane.

little incline in the driveway towards the street, but it was extremely slight. From Desplaines street to the east line of the driveway was 471 feet. From the west line of the driveway, which was eleven feet wide, to Halsted street was 328 feet. The street was sixty feet wide from lot line to lot line and about thirty-eight feet from curb to curb, of which thirty-eight feet the two tracks of the defendant occupied about fourteen feet and a half. The northerly track was used by west-bound cars, which come north from Desplaines street and turn west on West Monroe street; the southerly track was used by east bound cars. The cars are run by an overhead trolley wire. From the south lot line on the north side of the street to the corner of the Board of Education building east of the driveway is about eight feet, and to a little bay in the building, which begins fifteen feet and a half from the corner of the building, is two and a half feet less. The wagon was driven out of the driveway by the plaintiff, loaded as described at about eight in the morning on the day of the accident. The plaintiff was in the employ of the Board of Education and was going out with furniture consigned to different schools. He was going east to go to the south side, and to take the right hand side of the street was obliged to cross the tracks. When the wagon was across the northerly tracks it was struck (about midway of its length) by a westbound car, which pushed it a short distance (about two feet, one witness states), and then itself slid a few feet east on the track. Two men, who were on the wagon, the plaintiff being one of them, were thrown off, and the plaintiff was injured.

It is plain that the questions of negligence on the part of the defendant's servants and contributory negligence on the part of the plaintiff in these circumstances must depend on a variety of coincident facts—the speed of the car, the distance traversed by it after the motorman did see or should have seen the wagon, and the driver of the wagon did see or should have seen

the car, the condition of the street as affecting this last consideration, the condition of the rails, the conduct of the parties concerned in the driving of both car and wagon, and perhaps others. Among them the speed and distance of the car when the wagon should have been in sight from the car, or the car from the wagon, are perhaps the most important.

There were, including the plaintiff himself, the man with him on the wagon, and the motorman and conductor of the car, eight eyewitnesses of the accident called to testify. Stack, however, the companion of Kinane on the wagon, was for some reason not examined nor cross-examined as to the occurrence.

It would serve no good purpose for us to analyze and discuss separately the testimony of each of the other seven who did testify as to the facts. It is sufficient to say that we have thoroughly examined and compared it, and we do not feel, in view of the opinion of the Supreme Court in Chicago Union Traction Company v. Jacobson, 217 Ill. 404, that we can hold, as matter of law, that the plaintiff was guilty of negligence in attempting to cross the tracks when he did. In that case the Supreme Court used language entirely applicable, *mutatis mutandis,* to this:

"Appellee * * * testified that when he turned his team to cross the track the car was about one hundred feet east of him, and that he thought he had time to get across the track. He was bound to exercise a reasonable judgment in view of all the circumstances, and the court in passing on the motion was required to consider all the evidence, including the distance of the car from the wagon, the rate of speed, and all the circumstances.

"We cannot say that in so considering it the evidence necessarily led to but one conclusion, but we think that the question, whether under all the circumstances, appellee believed, upon reasonable grounds, that he had time to get across the track before the car

644     APPELLATE COURTS OF ILLINOIS.

VOL. 138.]     Chicago Cons. Traction Co. v. Kinane.

would reach him, was proper to be submitted to the jury."

One matter not mentioned in the argument of either party, we deem of some significance in relation to this question. The assumption seems to be made in the arguments that there was nothing that could obstruct the view on West Monroe street between Desplaines street and the driveway, unless it was the trolley poles, the effect of which is undoubtedly properly characterized by the appellant as insignificant. It is true that in the cross-examination of the plaintiff the following colloquy between him and counsel for defendant occurred:

"Q. The moment you got to the edge of that building you looked down to the west first? A. Yes.

Q. And you saw everything was clear down to Halsted street? A. Yes.

Q. And then you looked around the edge of that building up to the east and you saw everything clear up to Desplaines street; is that right? A. I saw no car there—there was no street car there at all.

Q. If there had been a car would you have seen it? A. I guess so.

Q. Those trolley poles were not in your way? A. I don't know, I didn't see the car, anyway.

Q. There was no car there when you came out? A. No. When I saw the car first my team was out on the north track.

Q. Now, having seen that the way was all clear on both sides of it, you started up this slight incline to the street, did you? A. Yes. It was only a very small incline."

But when the motorman of the car, Joseph Kelly, was on the stand, he was interrogated by counsel for defendant in re-direct examination thus:

"Q. At the time this occurrence took place, what was the condition of the locality there on Monroe street with reference to any other teams besides the one which this man who was hurt was driving? A. All kinds of teams.

Q. Were there other teams on the street there? 'A'. Yes, sir; plenty of them.

Q. On Monroe street? A. Yes, they are always on the street at that time in the morning.

(The statement about "other times" was stricken out.)

Q. There were other teams on the street at this time? A. Yes, sir."

The object of this part of the examination was apparently to negative the hypothesis of negligence on the part of the motorman, but it is equally important in its bearing on the alleged contributory negligence of the plaintiff. It is quite apparent that if many wagons were either standing by the curb or moving along the northerly half of West Monroe street between the driveway and Desplaines street it might very easily be impossible for the driver of the wagon to see the car so soon as he otherwise would have done, and so, although "exercising a reasonable judgment in view of all the circumstances," in the language of the Jacobson case, he might have driven on the track when, if he had unobstructed vision, he would not have done so. Under such circumstances, it would be true, as suggested by defendant's argument, that by looking east "the driver of the team, as soon as his wagon seat got beyond the line of the bay, could see an approaching car clear to Desplaines street, 471 feet distant." The duties and relations of both motorman and driver would be thus affected.

And as we think the question of contributory negligence in this case was for the jury, so do we think was the question of the negligence of the defendant. As we have before indicated, the distance of the car from the wagon and team when it was first possible for the motorman to see them, the speed of the car at that time and afterward, the promptness, or want of it, with which the reverse was applied, the question whether the force of the impact (owing to the speed of the car), or the operation of the reverse, caused the "rebound" or "sliding back," the degree of extra care required

646     APPELLATE COURTS OF ILLINOIS.

VOL. 138.]     Chicago Cons. Traction Co. v. Kinane.

by the condition of the rails, and the frequent use of the driveway by long wagons, were all debatable matters for the jury. The case may have been a close one, but we do not feel justified in interfering with their decision.

As all the instructions offered by defendant were given and none were given which are objected to by it, there can be no question raised on them. It is, however, claimed that the counsel for plaintiff in argument stated an erroneous proposition to the jury, and claimed it to be a rule of law governing the case, and that, objection being made by defendant, the court overruled the objection, and that this statement of the law became in effect an instruction from the court to the jury as to the law. To this is cited Chicago Union Traction Company v. Lauth, 216 Ill. 176. We do not think the cases are parallel. The remarks alluded to in the Lauth case were made in the closing argument, when defendant had no chance to reply, and on objection the court said he did not think there was anything wrong in the argument. In the present case the remarks complained of were made in the opening argument, and counsel for defendant in error are right, we think, in saying that the court by its ruling did not expressly or by implication announce any opinion as to whether or not the proposition stated by counsel was the law.

When counsel stated a proposition as the law absolutely to the jury, the judge sustained an objection on the ground expressly stated by him in the presence of the jury, that counsel had a right only to say what he believed the law to be, and that the court in the written instructions would state what the jury must take the law to be. This was correct. Vocke v. City, 208 Ill. 192.

It was not until objection was made to counsel for plaintiff stating what he *believed* to be the law, that the objection was overruled. There was no error in all this, nor any reason why, if the defendant's counsel's opportunity in his succeeding argument to tell the jury

what *he* believed the law to be on the proposition involved, did not satisfy him, he should not have appealed to the court for an instruction on the very point. As we view the matter, it is needless for us to discuss the rightfulness or wrongfulness of the proposition made by the plaintiff's counsel. It is not involved in the question raised.

The damages are complained of as excessive. We think that proper questions for the jury to pass on were whether the plaintiff was permanently injured, and whether the abscess in the ear the following year was the result of the injury received by the accident. Counsel for defendant argue strongly against it, but it is to be presumed that they also did so to the jury, who were properly the persons to decide when doctors disagreed. If the testimony of Dr. Shea and Dr. Cunningham was trustworthy, and their opinions properly received by the jury as the test with which to measure the damages, we cannot say they were too large.

Nor do we think that the opinions of either physician were so shown to be so based on subjective symptoms as to exclude them even under the most rigorous of the rules which are deduced from the cases involving this matter. Nor, under the opinion in the Jacobson case *(supra)* do we consider the question and answer in relation to the plaintiff's belief that he could cross the track in safety objectionable—certainly not reversible error.

The other rulings complained of do not, we think, need discussion.

The judgment of the Superior Court is affirmed.

*Affirmed.*